UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID BARNES, JENNIFER BARNES,

                Plaintiffs,

-vs-                                      Case No.  2:09-cv-618-FtM-36SPC

VI PARTNERSHIP, LTD., a Florida limited
partnership, VI LTD. LIMITED PARTNERSHIP, a
Michigan limited partnership, SC & G
INVESTORS, INC., a Florida corporation ,

                Defendants.
_____

## ORDER

This matter comes before the Court on Defendants' Motion to Compel (Doc. #59) filed on July 1, 2010.  Plaintiffs filed their Response in Opposition on July 13, 2010 (Doc. #61).  The Motion is now ripe for review.

This action was initiated on September 17, 2009, and arises from a dispute over the sale of a preconstruction luxury residential condominium in Naples, Florida by the Defendants to the Plaintiffs.  On or about October 24, 2005, the Barnes executed a Purchase Agreement for the purchase of Unit 603 in "The Beach Tower at Moraya Bay" for $4.3 million.  The Barnes' intended to pay cash for the condo at closing.  Under the terms of the Agreement, the Barnes' were required to close on the purchase of the unit within 20 days after Defendants had notified them in writing that construction of the condo was substantially complete.

By letter dated May 1, 2009, the Barnes' asked Defendants to discount the condo purchase price. There is a dispute between the Parties regarding the impetus for the re-negotiation of the sales price. Defendant alleges that in early 2009, due to the stock market decline, the Barnes' had lost 30%, or $4-5 million, of their approximately $12 million net worth and that therefore the Barnes' were reluctant to sell stock to pay cash for the condo. Because of their reduced net worth and perceived decline in real estate market values, they sought to renegotiate the purchase price with Defendant. Plaintiffs assert that Mr. Barnes, after realizing that the Moraya Bay was not going to include a private golf club and stand alone beach club, along with other amenities and aesthetic attributes that were promised in the project's sales and marketing efforts, he attempted to renegotiate a discounted price. Barnes testified that his present net worth is in excess of $20 million and that he has the money today to pay cash for the condo if the project included the amenities and "lifestyle" for which he believed he was purchasing when he executed the Purchase Agreement in 2005. Plaintiffs assert that numerous amenities that were included in the development plans for the property were promised to them and never completed. Plaintiffs paid a deposit by check in the amount of $430,000.

Preceding the litigation in this matter, there was a series of communications between the counsel for both Parties in which the Plaintiffs indicated to Defendants that their actions were running afoul of state and federal law. In this correspondence, Plaintiffs were attempting to reach a compromise by offering to waive their claims if the purchase price was discounted. In every correspondence Plaintiffs stated they were prepared to file an appropriate civil action to enforce their rights. The first such communication was from Plaintiffs' counsel on December 12, 2008. Pl. Ex. A. In this communication, Plaintiffs' counsel informs the Defendants that the sale of the

condominium unit violates both federal and state law. In response to the December 12, 2008 communication, Defendants' counsel sent a letter on January 12, 2009, rejecting the Plaintiffs' accusations. Pl. Ex. B. On May 1, 2009, Plaintiffs' counsel sent another settlement communication to Defendants' counsel in which they made a specific request that the sale price be discounted on numerous grounds. On June 8, 2009, Plaintiffs' counsel engaged the expert services of Cynthia S. Carroll of Carroll & Carroll, Inc., a Florida Certified Appraiser, and on July 24, 2010, Carroll provided counsel with her appraisal report for Unit 603. Shortly thereafter, Plaintiffs provided Defendants with a formal notice of recission by letter dated August 7, 2009, in which Plaintiffs assert that the "revised condominium documents materially altered or modified the offering in a manner that is adverse to them." Specifically, after reviewing the amended condominium documents, Plaintiffs discovered that the following material alterations had occurred: (1) the estimated date of completion was later; (2) the ownership structure was materially altered; (3) the form agreement for purchase and sale; (4) the development phasing; and (5) the recreation and other common facilities. The Plaintiffs assert that they were induced to enter into the purchasing contract under false pretenses. This litigation ensued.

Defendants now move to compel the production of the condo appraisal that was prepared by Carroll & Carroll, Inc., citing substantial need and undue hardship if they do not obtain it. Plaintiffs have objected to its production based on the work product doctrine and have timely served a privilege log setting forth with specificity the nature of the document withheld.

The Federal Rules state that, "[t]he party upon whom the request [for production] is served shall serve a written response within 30 days after the service of the request." Fed. R. Civ. P. 34(b). Likewise a party upon whom interrogatories have been served has thirty days to respond either by

filing answers or objections to the propounded interrogatories. Fed. R. Civ. P. 33(b). If the serving party does not receive a response to their interrogatories and request for production the serving party may request an order compelling disclosure. Fed. R. Civ. P. 37(a). Whether or not to grant the order to compel is at the discretion of the trial court. Commercial Union Insurance Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).

Like the attorney-client privilege, the party asserting the work-product privilege has the burden to prove that the documents sought are protected work product. Palmer v Westfield Insurance Company, 2006 WL 2612168 (M.D. Fla. June 30, 2006). The work product privilege "typically applies only to documents prepared principally or exclusively to assist in anticipation or ongoing litigation." Id. at * 3. Unlike the attorney-client privilege, which is controlled by state law in diversity cases, the work product privilege is controlled by Rule 26 of the Federal Rules of Civil Procedure. Id. at * 2. The Rule states in pertinent part:

> a party may obtain discovery of documents . . . otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed R .Civ. P. 26(b)(3). To claim the work product privilege the "party must anticipate litigation *at the time* the documents were drafted for these protections to apply. Kallas v. Carnival Corp., 2008 WL 2222152 *3 (S.D. Fla. May 27, 2008) (citing CSK Transportation, Inc., v. Admiral Insurance Co., 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995))(emphasis in original). Materials or documents

drafted in the ordinary course of business are not protected. Kallas, 2008 WL 2222152 at *3. Ordinarily, therefore, one must focus on *when* the document was created, and *why* it was created. Id. (citing In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir.1998) ("The 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (emphasis in original); Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp., 2003 WL 21146674 *14 (M.D. Fla. May 13, 2003) ("The testing question for the work product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omitted).

Thus, the first determination this Court must make is whether the appraisal was prepared in anticipation of litigation. Plaintiffs' counsel Richard J. Inglis has presented the Court with his signed affidavit, stating that the appraisal was prepared at his direction by an expert retained by him months after the Plaintiffs' counsel had informed Defendants that their sale of the condo violated federal and state law and just two weeks before the Plaintiffs formally rescinded the purchase contract. The appraisal - dated July 2009 - was obtained during settlement negotiations in which Plaintiffs were proposing to pay a lower price for the condo. Also, Plaintiff David Barnes has been deposed in this case. He stated that the appraisal was done when the litigation process was started and when later questioned if he asked the Defendants for a discount based on the appraisal, he testified "no." Thus, based on the record before it, the Court finds that the appraisal was prepared in anticipation of litigation and is therefore protected by the work product privilege.

Even though the Court has determined that the appraisal is protected by the work product doctrine, Defendants may still obtain the document if undue hardship or prejudice is demonstrated to the Court. To overcome the work product privilege, a party must show both a substantial need for the information and that seeking the information through other means would cause undue hardship. MCC Management of Naples, Inc. v. Arnold & Porter, LLP, 2010 WL 2431849, *1 (M.D. Fla. June 16, 2010). Defendants claim that the appraisal is substantially needed for trial preparation to determine whether it supports or contradicts the Barnes' claim that the absence of alleged amenities resulted in a material reduction in the value of the condo. In other words, the appraisal may include facts that support the Defendants' contention that the Barnes' failure to close and breach of the Agreement was actually motivated, not by the alleged absence of alleged amenities, but by their changed financial circumstances caused by the stock market decline, *e.g.*, the $4-5 million loss of their net worth, and the economic downturn resulting in a decline in market values. In addition, Defendants claim that they cannot obtain a third-party appraisal of substantially equivalent means because the Barnes' appraisal is unique. The Court disagrees. Defendants may commission their own appraisal from a qualified expert who may look at the state of the market at the time Plaintiffs' appraisal was obtained. Furthermore, under Federal Rule 26, in order to discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, a party must identify exceptional circumstances under which it is impracticable for them to obtain the facts or opinions on the same subject by other means. Fed. R. Civ. P. 26(b)(4)(B)(ii). Defendants have not met this standard. Substantial need has also not been shown as Mr. Barnes testified that he did not rely on the appraisal for any decision he made and Plaintiffs have made no effort to make any affirmative use of the appraisal.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Compel (Doc. #59) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   2nd    day of August, 2010.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record